# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

MICHAEL J. JOHNEN,
            Appellant,

            v.

DEPARTMENT OF THE ARMY,
            Agency.

DOCKET NUMBER
SF-1221-14-0338-W-2

DATE: September 2, 2016

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Wendy E. Musell</u>, San Francisco, California, for the appellant.

<u>David Michael Tucker</u> and <u>Douglas W. Hales</u>, Fort Hunter Liggett,
      California, for the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

### FINAL ORDER

¶1      The appellant has filed a petition for review of the initial decision, which denied his request for corrective action in this individual right of action (IRA) appeal.  Generally, we grant petitions such as this one only when:  the initial decision contains erroneous findings of material fact; the initial decision is based

---

[1]  A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

## BACKGROUND

¶2      Effective April 13, 2008, the agency appointed the appellant as a reemployed annuitant to a Supervisory Engineering Technician position with the U.S. Army Installation Management Command, Directorate of Public Works (DPW), at Fort Hunter Liggett (FHL) in California. *Johnen v. Department of the Army*, MSPB Docket No. SF-1221-14-0338-W-1, Initial Appeal File (W-1 IAF), Tab 4 at 18. On October 26, 2012, the appellant filed a complaint with the Department of Defense Inspector General (IG) alleging that he was the subject of a biased investigation during which agency employees made false statements about him. W‑1 IAF, Tab 7 at 24-25. He further alleged that agency managers failed to take action to address nepotism or discipline employees who spread rumors about him. *Id.* On August 21 and 23, 2013, respectively, the agency terminated the appellant from his position and barred him from FHL and its subinstallations for 180 days. W‑1 IAF, Tab 4 at 14, 16, Tab 7 at 43. On September 19, 2013, the appellant filed a complaint with the Office of Special

Counsel (OSC) alleging that the agency took these actions in reprisal for his IG complaint. W‑1 IAF, Tab 7 at 35.

¶3         On February 12, 2014, the appellant filed this IRA appeal with the Board and requested a hearing. W-1 IAF, Tab 1. On March 14, 2014, OSC closed its file regarding his complaint. W-1 IAF, Tab 17 at 8-9. In response to the administrative judge's jurisdictional order, W-1 IAF, Tab 5 at 7, the appellant alleged that the agency terminated him and subsequently barred him from FHL in reprisal for his IG complaint and for telling FHL Commander D.W. during a July 25, 2013 meeting attended by M.H., Deputy to the Garrison Commander, that an agency official engaged in nepotism and retaliated against him for his efforts to oppose her actions, W-1 IAF, Tab 7 at 1‑10.

¶4         Following a hearing, the administrative judge issued an initial decision denying the appellant's request for corrective action. *Johnen v. Department of the Army*, MSPB Docket No. SF-1221-14-0338-W-2, Appeal File (W‑2 AF), Tab 42, Initial Decision (ID) at 2, 17. The administrative judge found that the appellant exhausted his administrative remedies before OSC regarding his termination, the agency's decision to bar him from FHL, and the disclosures in his IG complaint about nepotism and individuals lying during agency investigations. ID at 8. However, the administrative judge found that the appellant did not exhaust his remedies before OSC regarding his July 25, 2013 disclosure and, therefore, the Board did not have jurisdiction over that disclosure. ID at 9. The administrative judge also found that the Board had jurisdiction over the appellant's termination in this IRA appeal, but not over the agency's decision to bar him from FHL because that action occurred when he was no longer employed by the agency.[2] ID at 9-11. Regarding the merits of his IRA appeal,

---

[2] In the alternative, the administrative judge found that, even if the Board had jurisdiction over the agency's decision to bar the appellant from FHL, he was unable to show that his protected activity was a contributing factor in that action because the individual who decided to bar the appellant—D.W.—knew nothing of his IG complaint

the administrative judge found that the appellant failed to prove that his purported protected activity[3] was a contributing factor in the agency's decision to terminate him.  ID at 17.

¶5      The appellant has filed a petition for review challenging the administrative judge's evidentiary rulings, his jurisdictional findings, and his findings on the merits of the appeal.  Petition for Review (PFR) File, Tab 1.  The agency has filed a response in opposition to the appellant's petition for review.  PFR File, Tab 3. The appellant has filed a reply to the agency's response.  PFR File, Tab 4.

## ANALYSIS

The administrative judge correctly found that the appellant failed to exhaust his administrative remedies before OSC regarding his purported disclosure of July 25, 2013.

¶6      The Board has jurisdiction over an IRA appeal if the appellant exhausts his administrative remedies before OSC and makes a nonfrivolous allegation that: (1) he made a disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a).  *Yunus v. Department of Veterans Affairs*, 242 F.3d 1367, 1371 (Fed. Cir. 2001).

¶7      As to the exhaustion requirement, under 5 U.S.C. § 1214(a)(3), an employee is required to "seek corrective action from [OSC] before seeking corrective action

---

when she made that decision and no one with knowledge of the complaint influenced her decision.  ID at 11 n.13.

[3] The administrative judge did not make a finding as to whether the appellant's disclosures constituted protected activity under 5 U.S.C. § 2302(b)(8) or (b)(9)(C). ID at 13.   The administrative judge concluded that such a determination was unnecessary given his finding that the appellant failed to establish that the disclosures he made in his IG complaint were a contributing factor in the agency's decision to remove him.  *Id.* (citing *Carney v. Department of Veterans Affairs*, 121 M.S.P.R. 446, ¶ 7 (2014), and *Mudd v. Department of Veterans Affairs*, 120 M.S.P.R. 365, ¶ 4 (2013)).

from the Board" through an IRA appeal. The Board's jurisdiction is limited to those disclosures of information and personnel actions that the appellant raised before OSC. *Coufal v. Department of Justice*, 98 M.S.P.R. 31, ¶¶ 14, 18 (2004); *Sazinski v. Department of Housing & Urban Development*, 73 M.S.P.R. 682, 685 (1997) (holding that the scope of an IRA appeal is limited to those disclosures raised before OSC). An appellant may demonstrate exhaustion through his initial OSC complaint, evidence that he amended the original complaint, including but not limited to, OSC's determination letter and other letters from OSC referencing any amended allegations, and the appellant's written responses to OSC referencing the amended allegations. *Mason v. Department of Homeland Security*, 116 M.S.P.R. 135, ¶ 8 (2011). To satisfy the exhaustion requirement, an appellant must articulate to OSC the basis for his request for corrective action "with reasonable clarity and precision." *Ellison v. Merit Systems Protection Board*, 7 F.3d 1031, 1037 (Fed. Cir. 1993); *Ward v. Merit Systems Protection Board*, 981 F.2d 521, 526 (Fed. Cir. 1992). Although an appellant may add further details to his claims before the Board, *Briley v. National Archives & Records Administration*, 236 F.3d 1373, 1378 (Fed. Cir. 2001), he first must make a reasonably clear and precise claim with OSC, *e.g.*, *Mintzmyer v. Department of the Interior*, 84 F.3d 419, 422 (Fed. Cir. 1996).

¶8      As previously noted, in response to the administrative judge's jurisdictional order, the appellant identified two protected disclosures: (1) his October 26, 2012 IG complaint; and (2) his notifying D.W. about nepotism during a July 25, 2013 meeting. W-1 IAF, Tab 7 at 1-3. The appellant submitted a copy of his OSC complaint, *id.* at 31-39; his January 9, 2014 letter to OSC stating that the decision to bar him from FHL was retaliation for his whistleblowing, W‑1 IAF, Tab 32 at 471; and OSC's March 14, 2014 letter informing the appellant of its decision to close its file regarding his complaint. W-1 IAF, Tab 17 at 8-9. In his OSC complaint, the appellant states that he was terminated in reprisal for his October 2012 IG complaint, and he describes the allegations set forth therein,

including his contention that various agency officials were aware of false statements about him. W-1 IAF, Tab 7 at 35-36. He further alleges that three specific agency officials (including M.H.) were aware of nepotism, "which [the appellant] had repeatedly complained about," yet took no action to address it. *Id.* OSC's letter to the appellant states that he identified his whistleblowing activity as his October 26, 2012 IG complaint regarding nepotism in the workplace and management's failure to take any action to correct the matter. W‑1 IAF, Tab 17 at 8.

¶9      In the initial decision, the administrative judge found that the appellant failed to exhaust his administrative remedies before OSC regarding his purported protected disclosure of July 25, 2013, because he made no reference in his OSC complaint to any alleged disclosure to D.W. or M.H. on July 25, 2013. ID at 9. The appellant challenges this finding on review, arguing that the statement in his OSC complaint that he repeatedly complained about nepotism was sufficient to exhaust his remedy before OSC regarding his purported protected disclosure of July 25, 2013, because he was referring to the July 25, 2013 meeting with D.W. when he stated in his OSC complaint that he repeatedly complained about nepotism. PFR File, Tab 1 at 10.

¶10     We find this argument unpersuasive. To satisfy the exhaustion requirement, an appellant must inform OSC of the precise ground of his protected activity, giving OSC a sufficient basis to pursue an investigation that might lead to corrective action. *Davis v. Department of Defense*, 103 M.S.P.R. 516, ¶ 10 (2006). Not only do the appellant's submissions to OSC fail to mention the July 25, 2013 meeting, but there is no indication in those submissions that the appellant made any disclosures to D.W. Thus, we find that the administrative judge correctly found that the appellant did not show that he exhausted his administrative remedies regarding his purported July 25, 2013 disclosure.

<u>The administrative judge correctly found that the appellant failed to prove that his IG complaint was a contributing factor in the personnel actions at issue in this appeal.</u>

¶11    After establishing the Board's jurisdiction in an IRA appeal, the appellant then must establish a prima facie case of whistleblower retaliation by proving by preponderant evidence that he made a protected disclosure that was a contributing factor in a personnel action taken against him. 5 U.S.C. § 1221(e)(1); *Mattil v. Department of State*, 118 M.S.P.R. 662, ¶ 11 (2012). The term "contributing factor" means any disclosure that affects an agency's decision to threaten, propose, take, or not take a personnel action regarding the individual making the disclosure. *Usharauli v. Department of Health & Human Services*, 116 M.S.P.R. 383, ¶ 31 (2011); 5 C.F.R. § 1209.4(c).

¶12    The most common way of proving that a disclosure was a contributing factor in a personnel action is the knowledge/timing test. *Shannon v. Department of Veterans Affairs*, 121 M.S.P.R. 221, ¶ 23 (2014). Under that test, an appellant can prove the contributing factor element through evidence that the official taking the personnel action knew of the whistleblowing disclosure and took the personnel action within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. *Id*.

¶13    An appellant also may show that the protected activity was a contributing factor by proving that the official taking the action had constructive knowledge of the protected activity, even if the official lacked actual knowledge. *Nasuti v. Department of State*, 120 M.S.P.R. 588, ¶ 7 (2014). An appellant may establish constructive knowledge by demonstrating that an individual with actual knowledge of the disclosure influenced the official accused of taking the retaliatory action. *Id*.; *Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶ 11 (2012). The Supreme Court has adopted the term "cat's paw" to describe a case in which a particular management official, acting because of an improper animus, influences an agency official who is unaware of the improper animus

when implementing a personnel action. *Dorney*, [117 M.S.P.R. 480](#), ¶ 11 (citing *Staub v. Proctor Hospital*, [562 U.S. 411](#), 415-16, 419-23 (2011) (applying a cat's paw approach to cases brought under the Uniformed Services Employment and Reemployment Rights Act of 1994)).

¶14    In assessing whether the appellant met his burden of proving by preponderant evidence that his IG complaint was a contributing factor in his termination, the administrative judge summarized the relevant hearing testimony of the appellant and the following agency officials:  M.H., who made the decision to terminate the appellant; D.W.; Colonel (Col.) P.M.,[4] Staff Judge Advocate at FHL, who was present during the August 21, 2013 meeting in which M.H. notified the appellant of his termination; and Deputy IG J.T., who received the appellant's IG complaint in March 2013 and notified Col. P.M. in April 2013 that the appellant was displeased with the manner in which investigations about him had been conducted.  ID at 6-8, 11 n.13.

¶15    The appellant's argument regarding the contributing factor element of his whistleblower reprisal claim, as summarized in the initial decision, was that Col. P.M. told M.H. about the appellant's IG complaint or showed it to him shortly before the appellant's termination.  ID at 13; W‑1 IAF, Tab 1 at 7.  The administrative judge noted that to support this claim, the appellant testified that during the August 21, 2013 meeting, he accused Col. P.M. of having given his complaint to M.H. and Col. P.M. did not deny the accusation.  ID at 14 (citing Hearing Transcript, Volume 1 (HT I) at 51).  Conversely, the administrative judge noted, M.H. and Col. P.M. stated that the appellant never raised the topic of his IG complaint during the meeting.  ID at 15 (citing HT I at 224-25 (testimony of M.H.); Hearing Transcript, Volume 2 (HT II) at 394-95 (testimony of Col. P.M.); W-1 IAF, Tab 8 at 19 (declaration of M.H.); Tab 9 (declaration of Col. P.M.)).

---

[4] At various times during these proceedings some pleadings refer to this individual as Lieutenant Colonel P.M.

The administrative judge further noted that Col. P.M. testified that he was unaware of the appellant's IG complaint, ID at 7 (citing HT II at 381, 383-84, 401), and M.H. testified that he had no knowledge of the complaint when he terminated the appellant, ID at 8 (citing HT I at 249‑50).

¶16     Applying the factors for resolving credibility issues set forth in *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458-62 (1987), the administrative judge credited the testimony of M.H. and Col. P.M. over that of the appellant, finding that they were "highly credible" and "clearly and consistently answered the questions posed to them."  ID at 15 (citing *Hillen*, 35 M.S.P.R. at 452).  By contrast, the administrative judge found that the appellant "appeared to frequently make unsupported allegations and engage in unwarranted speculation."  *Id.* Based on his credibility determinations, the administrative judge found that M.H. was unaware of the appellant's IG complaint when he decided to terminate the appellant, and that D.W. was unaware of the complaint when she decided to bar the appellant from FHL.  ID at 11 n.13, 13-14.  The administrative judge further found that M.H. and D.W. lacked constructive knowledge of the appellant's complaint, as there was no evidence that anyone with actual knowledge of the complaint influenced their decisions to terminate the appellant and bar him from FHL.  ID at 11 n.13, 15‑16.

¶17     Having determined that the appellant failed to prove that the agency officials who decided to take the actions at issue in this appeal had any knowledge of the appellant's protected activity at the time of those actions, the administrative judge then considered the following potentially relevant factors to the contributing factor issue:  (1) the strength or weakness of the agency's reason for taking the personnel actions; (2) whether the whistleblowing was directed at the responsible official; and (3) whether that individual had a desire or motive to retaliate.  ID at 16 n.15 (citing *Armstrong v. Department of Justice*, 107 M.S.P.R. 375, ¶ 23 (2007)).

¶18    The administrative judge found that these factors weighed in favor of the agency. ID at 16 n.15. More specifically, the administrative judge found that the record reflects that M.H. had no desire or motive to retaliate against the appellant because M.H. gave him the highest rating possible on his annual performance rating issued just 3 weeks before his termination. *Id.* (citing W‑2 AF, Tab 32 at 980-83). The administrative judge found that the allegations in the appellant's IG complaint are primarily directed at the individual who conducted various investigations regarding the appellant, and not toward M.H. *Id.* (citing W-1 IAF, Tab 7 at 21‑27). In that regard, the administrative judge noted that the appellant mentioned M.H. in his IG complaint in connection with a rumor the appellant heard in 2010 (i.e., that M.H. was planning to fire him), but found that the relaying of an outdated, baseless rumor would not have motivated M.H. to terminate the appellant's employment in 2013. *Id.*

¶19    The administrative judge further found that the agency had a strong, nonretaliatory reason for terminating the appellant in 2013; namely, that DPW was overstaffed and that the appellant, as a reemployed annuitant, was the only "over‑hired" individual in that division who could be terminated without conducting a reduction in force. ID at 16 n.15 (citing HT I at 248-49, HT II at 282 (testimony of M.H.); W-1 IAF, Tab 4 at 14; Tab 8 at 18-21 (declaration of M.H.)). In making this finding, the administrative judge credited M.H.'s testimony that the appellant was released because "the personnel structure and authorization did not warrant his retention and as a reemployed annuitant he could be released at will." ID at 16 n.15 (citing HT II, 296-301; W-1 IAF, Tab 4 at 14, 18; W-2 AF, Tab 37, Hearing Exhibit 1). Therefore, the administrative judge found, the appellant failed to meet his burden of proving that his IG complaint was a contributing factor in his termination. ID at 16.

¶20    The appellant challenges the administrative judge's findings regarding the contributing factor element of his appeal on review. PFR File, Tab 1 at 13-24. In

particular, he argues that the administrative judge erred in finding that M.H. and D.W. did not know of his IG complaint. *Id.* at 14. The appellant asserts that M.H.'s testimony that he was "normally aware" of IG complaints due to his position as "second in command of civilian personnel" is sufficient to impute knowledge of the appellant's whistleblower activity to M.H. *Id.* Similarly, the appellant asserts that D.W.'s testimony that Col. P.M. would have notified her if he had received information from the IG that impacted FHL is sufficient to impute knowledge of the appellant's whistleblower activity to D.W. *Id.*

¶21 The appellant is essentially arguing that the administrative judge erred in crediting M.H.'s and D.W.'s testimony that they did not know about the appellant's IG complaint at the time of the actions at issue in this appeal.[5] The Board will not disturb an administrative judge's findings when he considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions of credibility. *Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105-06 (1997); *Broughton v. Department of Health & Human Services*, 33 M.S.P.R. 357, 359 (1987). The Board must defer to an administrative judge's credibility determinations when, as here, they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing, and may overturn such determinations only when it has "sufficiently sound" reasons for doing so. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002); *McCarthy v. International Boundary & Water Commission*, 116 M.S.P.R. 594, ¶ 45 (2011) (finding that, in a whistleblower reprisal case, the Board is required to apply appropriate deference to an administrative judge's credibility findings consistent with the principles contained in *Haebe*), *aff'd*, 497 F. App'x 4 (2012).

---

[5] The appellant also argues on review that the administrative judge erred in finding that Col. P.M. did not know that he had filed an IG complaint. PFR File, Tab 1 at 15; ID at 14 (finding that Col. P.M. was not aware that the appellant had filed an IG complaint). Whether Col. P.M. knew of the appellant's complaint is of no consequence, however, given the administrative judge's finding that he played no part in the decision to terminate the appellant. ID at 14, 15.

We find that the appellant's assertions on review reflect his mere disagreement with the administrative judge's reasoned credibility findings, and they do not provide a sufficiently sound reason for overturning those findings. *Diggs v. Department of Housing & Urban Development*, 114 M.S.P.R. 464, ¶ 8 (2010). Accordingly, we find no reason to disturb the administrative judge's finding that M.H. and D.W. had no knowledge of the appellant's IG complaint at the time of the personnel actions at issue in this appeal.

¶22    On review, the appellant also appears to challenge the administrative judge's finding that the agency had a strong, nonretaliatory reason for his termination, arguing that the administrative judge failed to consider evidence that contradicts the agency's claim that it terminated the appellant because there was overstrength in DPW and he was the only person in an overhire position who could be terminated without a reduction in force. PFR File, Tab 1 at 19. More specifically, the appellant reiterates his argument from below that Director of Resource Management J.F. refuted this explanation for his termination by testifying that that there was no overstrength in DPW requiring his termination. *Id.* at 19-20; W-2 AF, Tab 40 at 18.

¶23    We find this argument unpersuasive. As the administrative judge noted in the initial decision, J.F., in his testimony, acknowledged that the appellant was an overhire. ID at 16 n.15 (citing HT I at 175, 178-79). To the extent that J.F. and M.H. provided conflicting testimony as to whether there was overstrength in DPW, we discern no reason to disturb the administrative judge's decision to credit M.H.'s testimony over J.F.'s testimony that FHL was "significantly over staffed," HT II at 297, and that FHL's personnel structure and authorization did not warrant the appellant's retention. ID at 16 n.15 (citing HT II at 296-301). Thus, we agree with the administrative judge's finding that the agency had a strong, nonretaliatory reason for terminating the appellant.

¶24    The appellant further argues on review that, in denying his request for corrective action, the administrative judge improperly failed to consider evidence

that similarly situated employees who had not made complaints of prohibited personnel practices were not terminated. PFR File, Tab 1 at 23. The appellant asserts that such evidence can show "pretext," thereby demonstrating that his whistleblowing activity was a contributing factor in his termination. *Id.* at 23‑24. He further contends that, because the agency did not terminate similarly situated nonwhistleblowers, it did not meet its burden of proving by clear and convincing evidence that it would have taken the same actions against him absent his protected disclosure. *Id.* at 24.

¶25    We find these arguments unavailing. Once an appellant establishes a prima facie case of whistleblower retaliation, the burden shifts to the agency to prove by clear and convincing evidence that it would have taken the same personnel action in the absence of the appellant's whistleblowing. *Jenkins v. Environmental Protection Agency*, 118 M.S.P.R. 161, ¶ 16 (2012). In determining whether an agency has met this burden, the Board will consider various factors, including any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). Significantly, however, the Board does not reach the issue of whether the agency showed by clear and convincing evidence that it would have taken the same actions absent the appellant's whistleblowing unless the appellant establishes a prima facie case of whistleblower retaliation. *Clarke v. Department of Veterans Affairs*, 121 M.S.P.R. 154, ¶ 19 n.10 (2014) (holding that the Board may not proceed to the clear and convincing evidence test unless it has first made a finding that the appellant established his prima facie case), *aff'd*, 623 F. App'x 106 (Fed. Cir. 2015). Because the appellant did not establish a prima facie case of whistleblowing retaliation, the agency's ability to show by

clear and convincing evidence that it would have taken the same actions absent the appellant's whistleblowing was not at issue here.[6]

¶26    We also find unpersuasive the appellant's argument on review that evidence regarding the agency's treatment of similarly situated employees would have established the contributing factor element of his IRA appeal by showing that the agency's proffered reasons for his termination were a pretext for whistleblower retaliation.  Because M.H. and D.W. were not aware of the appellant's IG complaint when they terminated him and subsequently barred him from FHL, their explanations for taking these actions clearly were not a pretext for retaliation.

<u>The appellant's challenges to the administrative judge's evidentiary rulings are unpersuasive.</u>

¶27    The appellant also argues on review that the administrative judge improperly excluded evidence and denied his request for witnesses.  An administrative judge has wide discretion to control the proceedings, including the authority to exclude testimony and evidence that he believes would be irrelevant or immaterial.  *Sanders v. Social Security Administration*, 114 M.S.P.R. 487, ¶ 10 (2010).  The Board has found that, to obtain reversal of an initial decision on the ground that the administrative judge abused his discretion in excluding evidence, the petitioning party must show on review that a relevant witness or evidence, which could have affected the outcome, was disallowed.  *Id.*

¶28    The appellant contends that the administrative judge improperly excluded evidence regarding the following:  (1) the July 25, 2013 meeting attended by M.H. in which the appellant purportedly informed D.W. of nepotism; and (2) an August 14, 2013 meeting in which the appellant reportedly made allegations of fraud, waste, and abuse, W-1 IAF, Tab 32 at 685.  PFR File, Tab 1 at 10-13.  The

---

[6] Because we find that the appellant failed to establish the contributing factor element as to the termination action, we need not address his contention that his post‑termination barment from FHL constitutes a personnel action under the WPA.

appellant asserts that the administrative judge should have permitted him to introduce evidence regarding these matters because such evidence was relevant to whether M.H. and D.W. knew about his protected disclosures when they decided to take the actions at issue in this appeal. PFR File, Tab 1 at 13.

¶29 We find this argument unpersuasive. As previously noted, the Board's jurisdiction in an IRA appeal is limited to the disclosures that the appellant raised with OSC. As explained above, the appellant asserted that he raised two disclosures with OSC—his October 26, 2012 IG complaint and his purported disclosure of July 25, 2013—however, he exhausted his remedy before OSC only as to the IG complaint. Consequently, even assuming arguendo that the excluded evidence would have shown that the officials knew about the appellant's purported disclosure of nepotism to D.W. on July 25, 2013, and his purported disclosure of fraud, waste, and abuse during a meeting on August 14, 2013, those purported disclosures (and therefore, M.H.'s and D.W.'s knowledge of them), are not within the scope of this appeal. Accordingly, we find that the administrative judge did not abuse his discretion by excluding evidence pertaining to the meetings of July 25 and August 14, 2013.[7]

---

[7] Because the appellant exhausted his remedy before OSC regarding his IG complaint, M.H.'s knowledge of that complaint is relevant to the contributing factor issue. Consequently, in assessing whether the administrative judge abused his discretion by excluding evidence regarding the July 25, 2013 meeting, we have considered the appellant's apparent argument on review that such evidence is relevant to the contributing factor issue because it would have shown that M.H. learned that he had "elevated his complaints to the IGs (sic)." PFR File, Tab 1 at 11. The hearing transcript reflects that, in response to the administrative judge's refusal to allow the appellant's attorney to question the appellant about the disclosure he purportedly made during the July 25, 2013 meeting because he had not exhausted his remedy with OSC regarding that disclosure, the appellant's attorney submitted an offer of proof in which she stated that testimony regarding this meeting was relevant because it would have shown that the appellant raised the issue of nepotism during the meeting. HT I at 44‑45. Significantly, however, the offer of proof did not state that the anticipated testimony would indicate that the appellant stated during the meeting that he had filed an IG complaint. Further, to the extent that the appellant is arguing on review that M.H. learned that he had filed an IG complaint during the July 25, 2013 meeting, such an assertion is inconsistent with his contention that M.H. was aware of the complaint

¶30     We also find unavailing the appellant's argument on review that the administrative judge erred in excluding evidence and testimony regarding an investigation of alleged prohibited personnel practices that was conducted by Lieutenant Colonel (LTC) E.O. at the behest of D.W.'s predecessor.  PFR File, Tab 1 at 13; *see* W‑2 AF, Tab 20 at 20, Tab 32 at 5.  The appellant asserts that the excluded evidence would have shown that M.H. knew about complaints regarding nepotism that preceded the appellant's complaints, and that M.H. was aware that agency employees had made false statements during agency investigations.  *Id.*  The key issue regarding the contributing factor element of the appellant's IRA appeal is whether M.H. was aware of the appellant's disclosure, not whether he was aware of the wrongdoing that was the subject of the disclosure.  Thus, even if the excluded evidence would have shown that M.H. was aware of nepotism claims that predated the appellant's IG complaint, and the alleged perjury that was the subject of that complaint, his knowledge of those matters is not material to the outcome of this appeal.  Consequently, we find that the administrative judge acted within his discretion by excluding evidence regarding the investigation conducted by LTC E.O. and by denying the appellant's witness request for LTC E.O.

¶31     Finally, the appellant argues that, during the prehearing conference, the administrative judge improperly denied his witness request regarding an employee of the Civilian Human Resources Agency, whose testimony purportedly would have established that his termination violated Office of Personnel Management regulations.  PFR File, Tab 1 at 25, W-2 AF, Tab 20 at 19.[8]  This

---

because Col. P.M., who was not present at that meeting, either told M.H. about the appellant's IG complaint or showed it to him.  Given these circumstances, we find that the appellant failed to show that the administrative judge abused his discretion by precluding his attorney from eliciting hearing testimony regarding the July 25, 2013 meeting.

[8] The prehearing conference summary does not indicate whether the administrative judge approved or denied this witness request.  W-2 AF, Tab 32 at 5.

allegation is essentially a harmful procedural error claim, which the Board does not have jurisdiction over in the context of an IRA appeal. *Hooker v. Department of Veterans Affairs*, 120 M.S.P.R. 629, ¶ 5 (2014); *Garrett v. Department of Defense*, 62 M.S.P.R. 666, 674 (1994). Therefore, we find that the administrative judge properly denied this witness request.

¶32    Accordingly, we affirm the initial decision.

### NOTICE TO THE APPELLANT REGARDING
### YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit.

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you want to request review of the Board's decision concerning your claims of prohibited personnel practices under 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D), but you do not want to challenge the Board's disposition of any other claims of prohibited personnel practices, you may request review of this final decision by the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction. The court of appeals must receive your petition for review within 60 days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(B) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. You may choose to request review of the Board's decision in the U.S. Court of Appeals for the Federal Circuit or any other court of appeals of competent jurisdiction, but not both. Once you choose to seek review in one court of appeals, you may be precluded from seeking review in any other court.

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right. It is found in title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11. Additional information about other courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD: _____
                                         Jennifer Everling
                                         Acting Clerk of the Board

Washington, D.C.